UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-cv-220-KSF

KAREN SMITH                                                         PLAINTIFF

vs.                        **OPINION AND ORDER**

LOUISE FOX                                                         DEFENDANT

* * * * * * * *

This matter is before the Court on the Motion of Plaintiff to remand this action to the Jessamine Circuit Court. Having been fully briefed, this motion is ripe for review.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 21, 2005, Plaintiff was injured when her automobile was hit by Defendant Fox's vehicle in Jessamine County, Kentucky. Plaintiff's complaint alleging negligence was filed in Jessamine Circuit Court on September 17, 2007. Pursuant to Kentucky rules, the complaint did not state any amount of damages. CR 8.01(2); Complaint, DE 1-2. Plaintiff is a resident of Kentucky; Defendant is a resident of Ohio.

On September 19, 2007, Plaintiff's attorney wrote Defendant's insurance carrier, Nationwide, to follow up on a phone conversation with them in which he had offered "a 6-month extension for filing an answer and any other pleadings necessary to protect or assert the rights of your insured." He asked that the Defendant be told "that I only filed the complaint because the two-year anniversary was approaching." [DE 5-4, Ex. 1]. He indicated an interest in talking with Nationwide about settlement and anticipated sending a demand package in three to four weeks. *Id.* On November 30, 2007, Plaintiff's counsel delivered a demand package to Nationwide in which he detailed Plaintiff's medical expenses through the end of 2007 in the amount of $93,012.00. *Id.*, Ex. 2, pp. 3, 6]. Plaintiff never claims she sent this package to the Defendant or that she requested

Nationwide send it to the Defendant. In March 2008, Defendant was notified that negotiations with Nationwide were unsuccessful. Defendant's counsel promptly filed an Answer on March 7, 2008 and submitted discovery requests.

Plaintiff's Answers to Interrogatories were served on April 23, 2008. [DE 5, p. 2]. Defendant's Notice of Removal was filed May 15, 2008, stating that Plaintiff's Answers to Interrogatories demanded more than $75,000, and receipt of the Answers was when Defendant became aware of the removability of the case. [DE 1, ¶¶ 5-6]. Plaintiff now seeks remand arguing that the November demand package sent to Nationwide was an "other paper from which it may first be ascertained that the case is one which is or had become removable" pursuant to 28 U.S.C. § 1446(b). Accordingly, Plaintiff contends that the notice of removal in May was too late, as it was more than thirty days after Nationwide received the demand package.

## II.    ANALYSIS

Diversity jurisdiction in federal court requires a minimum of $75,000 in controversy, exclusive of interest and costs. 28 U.S.C. § 1332. When the initial pleading does not show that a case is removable,

> a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

28 U.S.C. § 1446(b), "The intent of § 1446(b) is to 'make sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists.'" *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 466 (6th Cir. 2002); Wright, Miller, et al., *Federal Practice and Procedure* § 3732 ("Federal judges are inclined to interpret the statute in keeping with the intended purpose of making sure that a defendant has an opportunity to assert the congressionally bestowed right to remove upon being given notice in the course of the case that the right exists").

In a removal case based on diversity, the proponent of federal jurisdiction bears the burden of proving by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional minimum. *Gafford v. General Electric Co.*, 997 F.2d 150, 155 (6th Cir. 1993). "[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed" with all doubts resolved against federal jurisdiction. *Long v. Bando Mfg. of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).

Summary allegations of the amount in controversy, without underlying factual support, have been held insufficient for removal. *See, e.g., Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840, n. 1 (9th Cir. 2002) ("Petsmart's notice of removal was deficient because it only summarily alleged that the amount in controversy exceeded $75,000, without alleging any underlying facts to support this assertion."); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992). The Seventh Circuit "requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427(7th Cir. 1997). The Sixth Circuit applies a "preponderance of the evidence" test. *Gafford*, 997 F.2d at 158. Thus, where a complaint does not establish the basis for federal court jurisdiction, a defendant who removes before having adequate factual support will risk bouncing back and forth between state and federal courts until the plaintiff discloses sufficient facts to satisfy the federal court or until remand sticks.

On the other hand, a plaintiff can preclude removal entirely simply by filing a binding stipulation or affidavit with the complaint, or otherwise stipulating prior to removal, that the damages will not exceed the jurisdictional requirement of federal courts. *Id.* at 157 ("If the plaintiff does not desire to try his case in the federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove" (quoting 14A *Federal Practice* § 3725)). Plaintiffs who are not willing to accept this cap on their damages must resort to other strategies to defeat the defendant's statutory right to removal. The Eleventh Circuit recently noted that "a  plaintiff who has chosen to file her case in state court will

generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215, n. 63 (11th Cir. 2007).

There is no dispute in the present case that the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are met. The parties are from different states and the amount in controversy exceeds the jurisdictional minimum. The only dispute is whether the removal was timely under the thirty-day requirement of 28 U.S.C. § 1446(b).

There also is no dispute that Plaintiff did not send a copy of the November 2007 demand package to the Defendant, Louise Fox, or to her counsel. Plaintiff did not ask Nationwide to send the demand package to Fox. There is no evidence that Fox or her counsel were ever made aware of the demand. Once defense counsel was retained and advised that settlement negotiations had broken down, an Answer and discovery requests were promptly filed. Upon receipt of Answers to Interrogatories claiming damages in excess of the jurisdictional amount, counsel filed a notice of removal stating, subject to Rule 11 sanctions, that the "Defendant became aware of the removability of the case on April 23, 2008, when the Plaintiff served Answers to Interrogatories on the Defendant." [DE 1, p. 2].

In her reply, Plaintiff speculates for the first time that it "would be highly unusual for a defense attorney to enter an appearance and file an Answer following a breakdown of settlement discussions without reviewing the failed settlement proposal." By waiting until her reply to raise this argument for the first time, Plaintiff improperly denied Defendant any opportunity to respond. Moreover, such speculation is not enough to rebut Defendant's affirmative statement that the "Defendant became aware of the removability of the case on April 23, 2008, when the Plaintiff served Answers to Interrogatories on the Defendant." [DE 1, p. 2].

Plaintiff claimed in her remand motion that the demand to Nationwide constituted an "other paper" that started the thirty-day removal clock running in November 2007. In support, she relies

heavily on *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759 (5th Cir. 2000) for the proposition that a settlement offer constitutes an "other paper" that triggers the time limit for removal under § 1446(b). [DE 5-2, p. 3].

In *Addo*, the plaintiff was the beneficiary under a $5,000 life insurance policy. She sued Globe Life and Accident when her claim was denied. A month later, when Globe offered to settle for $5,000, plaintiff wrote Globe with a counter offer of $250,000. *Id.* at 760. Several months later, Globe served interrogatories requesting confirmation that damages would not exceed $75,000. Globe removed when plaintiff refused that confirmation. The court held that the settlement demand sent to the defendant Globe several months earlier constituted an "other paper" to trigger the time for removal, with the result that Globe's removal was untimely. The court noted its rule that an "'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Id.* at 762. It also said the post-complaint letter must not be "plainly a sham." *Id.*

The *Addo* dissent noted some of the problems likely to result from the use of settlement letters to trigger the removal deadline. It observed that the complaint was artfully crafted to prevent removability by demanding the proceeds of the $5,000 policy and other damages "not to exceed $65,000." Under the circumstances, it characterized the request for $250,000 as "no counteroffer at all," but only a "sarcastic and grossly hyperbolized 'sham' counteroffer." *Id.* at 763. The dissent noted several cases in which similar demand letters were held to be "nothing more than posturing by counsel" and not a reliable indicator of the damages sought. *Id.* at 764. It predicted that cautious defense lawyers will file notices of removal every time any writing from plaintiff obliquely references a figure of $75,000 or more and, thereby, "create a veritable ping pong game of removal and remand between state and federal courts." *Id.* at 765.

Another court recognized "that it must exercise considerable caution in considering such evidence." "[T]he Court agrees with those courts that have held that a settlement letter is only one

factor to consider in assessing the amount in controversy and that courts must consider the context in which such a settlement demand was made." *Vermande v. Hyundai Motor America, Inc.*, 352 F. Supp.2d 195, 202 (D. Conn. 2004).

Despite these problems associated with using settlement letters as evidence of the jurisdictional amount, a number of lower courts have accepted settlement letters as giving notice of removability. Plaintiff also relies on the following cases: *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (Where plaintiff made no effort to argue the demand was inflated, "this evidence is sufficient to establish the amount in controversy"); *LaPree v. Prudential Financial*, 385 F. Supp.2d 839, 850 (S.D. Iowa 2005) ("Under the circumstances of this case, LaPree's demand letters constituted 'other paper' and provided the necessary affirmative proof that the jurisdictional amount was satisfied...."); *Efford v. Milam*, 368 F. Supp.2d 380, 385 (E.D. Pa. 2005) (Correspondence to defense counsel that Plaintiff was filing a RICO claim made it "'unequivocally clear and certain' that federal jurisdiction lies"); *Vermande v. Hyundai Motor America, Inc.*, 352 F. Supp. 2d 195, 200, 201 (D. Conn. 2004) (Fax from plaintiff to defense counsel stating damages exceed $250,000 can be considered in determining the propriety of removal); *Martin v. Mentor Corp*, 142 F. Supp.2d 1346 (M.D. Fla. 2001) (Plaintiffs' faxed proposal to defendant to settle for $175,000 was sufficient notice of removability); *Jamison v. Kerr-McGee Corp.*, 151 F. Supp. 2d 742, 745 (S.D. Miss. 2001) (Correspondence between counsel that a non-diverse defendant would never be served supported removability); and *Morrow v. Daimler Chrysler Corp*, 451 F. Supp. 2d 965, 966, 969 (N.D. Ill. 2006) (Plaintiff's letter to defense counsel seeking settlement of $2.5 million gave defendants notice that the case was removable). The Sixth Circuit has not decided the specific question before this Court, but it has recognized that "a plaintiff's responses to deposition questioning may constitute an 'other paper' under Section 1446(b)." *Peters*, 285 F. 3d at 466.

There is a very important distinction, however, between all of the cases relied on by Plaintiff and the facts of present case. In all of the cases cited, the **defendant** or **defendant's counsel**

received notice of the demand containing the jurisdictional facts. *Addo*, 230 F.3d at 670 ("she served a demand letter on Globe"); *Cohn*, 281 F.3d at 839 ("letter from Cohn to Petsmart"); *LaPree*, 385 F. Supp. 2d at 840 ("LaPree sent [defendant] Prudential a demand letter"); *Efford*, 368 F. Supp. 2d at 382 ("Plaintiffs' counsel responded [to defendants' counsel] with a letter"); *Vermande*, 352 F. Supp.2d at 200 ("letter sent by facsimile by Plaintiff Vaneck to Defendants"); *Martin*, 142 F. Supp. 2d at 1348 (M.D. Fla. 2001) ("Plaintiffs faxed and mailed a Proposal for Settlement to Defendant Mentor"); *Jamison*, 141 F. Supp. 2d at 745 ("letter from counsel for Sanderson, stating that counsel for the Plaintiffs 'does not intend to attempt to serve Sanderson'"); *Morrow*, 451 F. Supp. 2d at 965 ("Morrow's counsel issued a demand letter and package to Defendants' attorneys"). In contrast to those cases, there is no evidence here that notice was given to the Defendant or Defendant's counsel prior to Plaintiffs' Answers to Interrogatories, which were the basis for Defendant's notice of removal.

The removal statute, 28 U.S.C. § 1446(b) provides in part:

> a notice of removal may be filed within thirty days **after receipt by the defendant**, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

(Emphasis added). This plain language of the statute that the "defendant" must receive the "other paper" cannot be simply ignored. Two of the cases relied upon by Plaintiff specifically refer to the need to give the defendant notice: *LaPree*, 385 F. Supp. 2d at 845 ("If the plaintiff never serves the defendant with notice that the amount in controversy exceeds the federal jurisdictional amount, the defendant will be able to remove the case for up to one year after the commencement of the action"); and *Martin*, 142 F. Supp. 2d 1349 ("Once the Defendant is properly before the court, as here, and discovers grounds for removal....).

In the present case, the Defendant was never properly before the court until her Answer was filed. The removal notice states that she became aware of the removability of the action upon receipt of Plaintiff's Answers to Interrogatories. There is no evidence the Defendant or her counsel

ever received the demand letter on which Plaintiff relies. Plaintiff could easily have avoided this entire issue merely by serving Mrs. Fox with the demand letter, just as she sent the complaint to her by certified mail. [DE 5-4, September 19, 2007 letter]. Instead, Plaintiff chose to send the demand letter only to Nationwide.

In construing the thirty-day removal time limit that begins with the filing of the complaint, several courts have rejected arguments based on what the defendant subjectively knew.

> We find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount. This rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." Further, this rule prevents a plaintiff from disguising the amount of damages until after the thirty-day time limit has run to avoid removal to federal court.

*In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (quoting *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992)). "[I]n deciding which documents commence the running of the thirty-day removal period, 'the relevant test is not what the defendant purportedly knew about the removability of the action, 'but what these documents said.'" *Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 54 (3d Cir. 1993). Similarly, when a plaintiff chooses not to give notice to the defendant regarding the amount in controversy, courts should not indulge a plaintiff's request to speculate on when or what the defendant purportedly knew or might have learned. Defendant Fox met her burden by stating she became aware of removability upon receipt of the Answers to Interrogatories. Speculation does not defeat her right to remove.

As an alternative argument in her motion to remand, Plaintiff makes an unsupported, passing reference to Nationwide as the agent for Defendant: "A September 19, 2007 letter from Plaintiff advised the agent for Defendant, Ms. Julie Vesico of Nationwide Insurance that the complaint had been filed and she was 'welcome to a 6-month extension for filing any answer....'" [DE 5-2, pp. 1-2]. Any reliance by Plaintiff on *Addo* and *LaPree* where the correspondence was sent to the insurance company is misplaced here, as the insurance companies in those cases were

the named **defendants**.  Other attempts to argue that an insurance company is an agent of the insured have been rejected by Kentucky courts.  *See Cox v. Fernihough*, 2006 WL 29194 at *3 (Ky. Ct. App. 2006) (courtesy copy of complaint sent to insurance company is not notice to the insured); *Bottoms v. Bottom*, 880 S.W.2d 559, 561 (Ky. Ct. App. 1994) (absent consent, agreement by carrier does not bind insured).  *See also Murphy v. Allora*, 977 F. Supp. 748, 751 (E.D. Va. 1997) ("[T]here is nothing about the insured-insurer contractual relationship generally that makes the insurer the agent of the insured for receipt of service of process or other legal documents on her behalf.").

In her reply, Plaintiff argues for the first time that Nationwide was the apparent or ostensible agent for Defendant Fox.  In support, Plaintiff argues that, after Plaintiff initiated discussions with Nationwide, Defendant Fox gave permission for Nationwide to disclose the policy limits.  Plaintiff attempts to stretch this into "signal[ing] the Defendant's consent to communicate through Vescio, rather than corresponding directly with the undersigned."  [DE 9, p. 2].  Plaintiff urges that Defendant's further acceptance of an extension to answer "induc[ed] Plaintiff to believe that Vescio was her agent."  *Id.*  Accordingly, Plaintiff insists that Nationwide's knowledge of the demand package is imputed to Defendant.  *Id.* at 3.  She seeks to distinguish *Bottoms* and *Murphy* as not involving a pattern of conduct that made the carrier appear to be the defendant's agent.  *Id.* at 4.

Kentucky adopted the principles of apparent or ostensible agent from the *Restatement (Second) of Agency § 267* as follows:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985).  In holding that a patient need not inquire of each person whether he is an employee or independent contractor of the hospital, the court said:  "Indeed, it would be astonishing for courts to require a patient to ask emergency room personnel such a question considering the usual circumstances of the patient at the time he seeks

out the emergency room for treatment." *Id.* at 258. In the present case, there is no similar emergency or unusual circumstance, and there is no other basis for Plaintiff's counsel to "assume" an agency relationship between the carrier and the insured. There is no evidence that Defendant Fox ever represented to Plaintiff or to Plaintiff's counsel that Nationwide was her agent. There is no evidence that Fox held Nationwide out to Plaintiff as her agent. To make a finding of apparent agency, Plaintiff must show both that Defendant acted in a manner that would lead a reasonable person to conclude that Nationwide was an agent of Defendant Fox and that Plaintiff acted in justifiable reliance on that representation. *Sims v. Marriott Intern., Inc.*, 184 F. Supp.2d 616, 617 (W.D. Ky. 2001). Plaintiff does not cite any authority, and the Court has found none, that mere approval to release policy limits is sufficient to lead a reasonable person to believe an insurance carrier is an insured's agent. There is also no evidence that Plaintiff justifiably relied on such an agency relationship. *Id. See also Edwards v. Bank One, Columbus, N.A.*, 2004 WL 226037 at *2 (Ky Ct. App. 2004). Instead, there is only evidence of Plaintiff taking the initiative to negotiate settlement with the insurance carrier, while failing to provide information to the Defendant that would allow her to exercise her statutory right to remove the case to federal court.

It is the opinion of this Court that Defendant has demonstrated that removal was timely, and Plaintiff has failed to demonstrate conduct on the part of Defendant to support a claim that Nationwide was Defendant's apparent or ostensible agent.

## III. CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** that Plaintiff's motion to remand [DE 5] is **DENIED**.

This August 21, 2008.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**