UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-CV-220-KSF

KAREN F. SMITH                                                                PLAINTIFF

vs.                         **OPINION AND ORDER**

LOUISE FOX                                                               DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's motion *in limine* (1) to preclude evidence regarding the date Plaintiff hired an attorney and the identity of that attorney; (2) to preclude reference to or a jury instruction on "sudden emergency" as a defense, and (3) to preclude questioning regarding what Russell Smith overheard during meetings with Plaintiff and her counsel. Having been fully briefed, these matters are ripe for consideration.

**I.    BACKGROUND**

Plaintiff claims the date she first hired an attorney and the identify of that attorney are irrelevant and potentially prejudicial. [DE 63, ¶ 2]. Defendant claims Plaintiff did not seek medical assistance until after she contacted an attorney and that prospective jurors may have a relationship with that attorney, which should be explored on voir dire. [DE 70].

Plaintiff argues that the defense of "sudden emergency" is not legally viable under the facts of this case. [DE 63, ¶ 7]. Defendant argues that whether the existence of fog the morning of the accident created a situation of sudden emergency is a question for the jury to decide [DE 70, ¶7].

Plaintiff also seeks to preclude questioning regarding communications with counsel that were overheard by her husband, Russell Smith. During Mr. Smith's discovery deposition, defense counsel asked if Mr. Smith met with Plaintiff's counsel. Following an affirmative response, defense

counsel asked Mr. Smith about discussions with counsel occurring in his presence. Plaintiff's counsel objected that the subject was outside the scope of discovery, but did not assert a privilege or direct the witness not to answer. Instead, Plaintiff's counsel requested that the scope of discovery be taken up with the judge. Mr. Smith then declined to answer any questions regarding communications with counsel that he overheard. [DE 90, Ex. 1].

Plaintiff filed a motion *in limine* to prevent questioning regarding what Mr. Smith overheard, stating it was "outside the scope of the parties' agreed discovery plan." [DE 63]. Defendant responded that the conversations were not protected by the attorney-client privilege because Mr. Smith was not a party, was not represented by Plaintiff's counsel, and any privilege for communications between Plaintiff and counsel was waived by Mr. Smith's presence. Defense counsel further denied any agreement to limit the scope of discovery. Accordingly, defense counsel claimed the questions were proper discovery. [DE 70]. During the pretrial conference, Magistrate Judge Todd ordered the parties to brief the issue. [DE 86].

Defendant reiterated that there was no attorney/client privilege between Plaintiff's counsel and Mr. Smith, and that communications between client and counsel lose their privilege if disclosed to a third party. Defendant also argued that no common interest privilege, adverse spousal testimony privilege, or confidential spousal communication privilege applied under the facts of this case. Accordingly, Defendant argued that the communications in Mr. Smith's presence were discoverable. [DE 90].

Plaintiff argued that "such questioning should not be permitted at trial" because it is irrelevant and it falls outside the scope of the discovery plan. [DE 91, p. 1]. Plaintiff claims that the fact communications are not privileged does not make them admissible. Plaintiff discusses the issues of liability and damages, and contends that discussions with counsel would not be probative on those issues and, therefore, would be inadmissible. Additionally, Plaintiff argues that the parties'

2

joint report under Fed. R. Civ. P. 26(f) listing topics for discovery precluded discovery on other topics. [DE 91, p. 3].

## II. ANALYSIS

### A. Voir Dire and Questions Regarding the Date of Hiring Counsel

Based on the facts of this case, the Court agrees with Plaintiff that the identity of her first counsel is irrelevant, and that evidence on that subject is likely to be unduly prejudicial. Accordingly, her motion is granted to that extent. Voir dire in this case should not take more than five minutes per side. If Defendant chooses, she may ask if any of the venire are or have been employed by an attorney and the name of the employer attorney if there is a positive response.

The date Plaintiff first hired counsel, however, is relevant to Defendant's argument that Plaintiff may have exaggerated her medical condition or her damages. Plaintiff's motion to preclude that question is denied.

### B. Sudden Emergency

In this diversity action, the substantive law of Kentucky applies. *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Kentucky law describes the "sudden emergency" qualification to prudent driver's duty of care as follows:

> [W]hen a defendant is confronted with a condition he has had no reason to anticipate and has not brought on by his own fault, but which alters the duties he would otherwise have been bound to observe, then the effect of that circumstance upon those duties must be covered by the instruction.

*Harris v. Thompson*, 497 S.W.2d 422, 428 (Ky. 1973). In *Regenstreif v. Phelps*, 142 S.W.3d 1, (Ky. 2004), the court gave examples of when such a qualification would be appropriate, for example, encountering a patch of ice on the roadway, children or animals darting onto the roadway, swooping airplanes or falling boulders. *Id.* at 5. That court said: "The sudden emergency doctrine does not excuse fault; it defines the conduct to be expected of a prudent person in an emergency situation." *Id.* at 4.

3

In *Harris*, the defendant was traveling on a dry highway and hit a patch of ice caused by a broken water line in a house adjoining the highway. "He did not see the ice, did not know it was there, said he had never seen any ice or water there before, and did not slow down." *Harris*, 497 S.W.2d at 426. The court held the "sudden emergency" qualification was appropriate in that case because the situation, which could not be anticipated, qualified the defendant's duty to "operate his automobile on the right-hand side of the highway and not to pass over the center median." *Id.* at 427-28.

In the present case, Defendant Fox states she is entitled to a jury instruction on sudden emergency because she "was confronted with fog which was not brought on by her own fault." [DE 70, p. 4. Defendant admits that Plaintiff was traveling south on US 27 on her way to work in Danville and was stopped at a Nicholasville traffic light when her vehicle was hit by Defendant. [DE 46, pp 1-2]. Defendant testified that she encountered fog as she came through Lexington on her way to Nicholasville. Defendant said in her deposition that she considered pulling over because she was having trouble seeing. She said she did not because "I'd be afraid to, afraid of being robbed or something. I don't know. I just don't stop." Fox Depo. p. 19. Defendant said she did not see the red light or the traffic stopped at the red light until it was too late. She agreed that she was not going slow enough to stop within her field of sight, and could not stop in time to avoid hitting Plaintiff's vehicle. Fox Depo. p. 36.

Defendant is not entitled to a "sudden emergency" instruction in this case. There is no evidence of a sudden condition that could not be anticipated. Defendant drove in fog from Lexington to Nicholasville and admits she considered pulling over because she was having trouble seeing. She admits she was not traveling slow enough to stop within her field of sight. Traffic lights and traffic stopped at a light are conditions that should have been anticipated in a congested area. The fact that Defendant was driving too fast to stop within her field of sight is a condition

"brought on by her own fault." There is no evidence to support a qualification on Defendant's duties to operate her vehicle in a proper manner. Accordingly, Plaintiff's motion will be granted.

### C. Scope of Discovery and Attorney-Client Privilege

Rule 26(f)(3) requires a plan for discovery which "must state the parties' views and proposals on:" ... "(B) the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues." The Court disagrees with Plaintiff's interpretation that such a proposed discovery plan places mandatory limits on the subjects for discovery. The plain language of the Rule is not so limiting; it merely seeks proposals on the subjects on which discovery "may" be needed. The scope of discovery is defined by Rule 26(b)(1): "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). There is no court order in the present case limiting discovery to the topics in the joint report.

Mr. Smith testified that his wife "talked about her case" while he was present. [DE 90, Ex. 1, p. 68]. While the Court questions how these discussions may be relevant, the fact that the discovery was not allowed leaves the Court with no record from which relevancy can be determined. Plaintiff's argument that questions at trial regarding the meetings with counsel are irrelevant and should not be admitted at trial is premature. The issue to be determined first is whether the information is discoverable.

Defendant took the discovery deposition of Mr. Smith and Plaintiff objected to questions about meetings with counsel. Rule 30(c)(2) provides that following an objection, "the examination still proceeds." Fed. R. Civ. P. 30(c)(2). There are stringent limitations on instructing a witness not to answer. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* While Plaintiff's counsel technically avoided instructing the witness not to answer, the witness

5

got the message and declined to answer. [DE 90, Ex. 1, pp. 67-68]. In this case, the questions should have been answered during the deposition unless the information was privileged.

Plaintiff does not claim any attorney-client relationship with Mr. Smith, nor does Plaintiff claim any other privilege that might be applicable under the facts of this case. Plaintiff does not cite any authority that would preclude discovery of communications that took place in Mr. Smith's presence. In *Reed v. Baxter*, 134 F.3d 351 (6th Cir. 1998), the court said: "[i]t is clear that the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party." *Id.* at 357, citing 8 *Wigmore on Evidence* § 2311 (3d ed. 1940).

Accordingly, the Court will permit Defendant to continue the discovery deposition of Mr. Smith on the limited issue of communications between Plaintiff and counsel that Mr. Smith overheard. This limited deposition must not delay the trial in any way. If Defendant can show that any information obtained in this continued deposition is relevant, the Court will consider its admissibility upon timely motion.

### III.   CONCLUSION

**IT IS ORDERED** that:

A. Plaintiff's motion to preclude evidence of the date she hired an attorney is **DENIED**, but her motion to exclude evidence identifying that attorney is **GRANTED** [DE 63, ¶ 2];

B. Plaintiff's motion to preclude references to or a jury instruction on "sudden emergency" is **GRANTED** [DE 63, ¶ 7]; and

C.  Plaintiff's motion to preclude discovery regarding communications with counsel that were overheard by Russell Smith is **DENIED** [DE 63, ¶ 8].  Defendant may continue the deposition of Mr. Smith on this limited issue so long as the deposition does not delay the trial of this matter.

This July 10, 2009.



Signed By:

*Karl S. Forester* KSF

United States Senior Judge